### James M. Smith et al.
### v.
### The People, for use, etc.

*Dram-shops—Principal. and Surety—Action on Bond—Evidence—Instructions.*

1. In an action brought against the principal and sureties on a bond, given under the Dram-Shop Act, to recover damages sustained by the plaintiff through the death of her husband while intoxicated, the intoxication being alleged to have been caused by liquor drank in the principal's saloon, it is *held:* That the evidence was ample to sustain a verdict for the plaintiff.

2. Where it is shown in evidence that the deceased drank liquor in defendant's saloon, and that he thereupon became intoxicated, such evidence is sufficient proof of the character of the liquor, without specific proof that the liquor drank was intoxicating.

[Opinion filed December 8, 1890.]

Appeal from the Circuit Court of Carroll County; the Hon. William Brown, Judge, presiding.

Messrs. J. M. Hunter and D. S. Berry, for appellants.

Mr. George L. Hoffman, for appellees.

C. B. Smith, P. J. This was an action in debt brought by

appellee upon the bond of appellant Smith against him and his sureties, which bond was given under the "Dram-Shop" act, for the protection of those who might be injured from the use of intoxicating liquor, obtained from appellant Smith.    The defendants appeared and pleaded to the action, and a trial before a jury resulted in a verdict for appellee, $3,000 for their debt and for $1,000 damages.    The court overruled a motion for a new trial and gave the plaintiff judgment on the verdict.    Appellants bring the record here on appeal and assign numerous errors.    The errors relied on are that the verdict is not sustained by the evidence, and that the court erred in giving and refusing instructions and in the admission of evidence.    The declaration sets out that William Williamson was the husband of Anna Williamson; that he was a large farmer and stock raiser, and that from his labor and profits arising from his business he supported his wife and children in comfort, and that on a certain occasion he drove his team of horses to Mount Carroll, and while there the defendant James Smith sold him intoxicating liquors, from which he became intoxicated, and that during the night ensuing the said William Williamson, while in a state of intoxication, so caused by the said James Smith selling him intoxicating liquors, attempted to drive his team home in the night time, but on account of such intoxication he could not manage his team, and that they ran away with him and killed him, from which plaintiff and her children suffered loss in their means of support.

We think the evidence fully sustains and proves the averments in the declaration.

On the day on which Williamson lost his life, he drove his team to Mount Carroll in the forenoon, and the proof is ample and abundant that he spent a large share of his time during that afternoon in James Smith's saloon, drinking and treating and being treated.    He was in such a state of intoxication that he secured the assistance of some person to drive him across a bridge in leaving town on his way home.    About nine o'clock that night his team reached home running, but without the wagon and without their owner being with them.    Search was

instituted by his wife and family for William Williamson, who was found in the road wounded and unconscious and dying from being thrown from his wagon. Upon his person was found a broken whisky bottle and his clothes saturated with whisky. He was carried home to his wife and children, from whom he had gone in the morning, in health and in the vigor of manhood, and in the prime of life, unconscious, and in half an hour was a corpse. He was in the habit of using intoxicating liquor, and of becoming intoxicated at times. This habit was known to the defendant Smith.

Counsel for appellants insist with earnestness, that while there is evidence to show that Williamson drank beer in Smith's saloon, still no one swears that such beer was intoxicating, and it is seriously urged upon us that there is absolutely no proof that any of the liquor sold to Williamson was intoxicating. If we concede the absence of such direct or positive proof it does not help the defendants, for the reason that such direct proof is not necessary. The intoxicating character of any drink may be shown just as well if not better by its effect on those who drink it, as by proving the fact that the liquor itself is intoxicating. Here the proof is full and not denied, that Williamson drank in Smith's saloon many times that afternoon up to and even after dark, when he is found in a drunken and helpless condition with a bottle of whisky in his pocket. It is utterly absurd to contend that such intoxication did not result from what he drank in the saloon, or that there is no proof that such drink, whatever it may have been, was not intoxicating. The plaintiff was not bound to prove that the deceased drank any particular kind of liquor and give it a name. It was enough that she proved that her husband obtained some kind of a drink in that saloon that made him drunk, and whether it was " very weak beer" in the language of some of the witnesses, or " lager beer," or wine, brandy, whisky, or all of them, was wholly immaterial. Men do not pay license to run saloons to furnish their customers with water and " very weak beer" alone, nor do men go to saloons for that kind of drinks. The jury had a right and it was their duty to use their common sense and their

Smith v. The People.

general knowledge and observation as intelligent men, and apply it to the evidence before them in determining all questions of fact involved in the controversy. Without discussing the evidence in detail, it is sufficient to say that we have carefully read and considered it, and are entirely satisfied with the verdict of the jury.

It is objected that the court erred in allowing proof of the fact that the deceased was in the habit of getting intoxicated on former occasions. In this there was no error. . The bondsmen become liable for all the acts of their principal, to the same extent as the principal himself would be liable. The very object of the bond is to make them liable for the illegal and wrongful acts of their principal; and to sell intoxicating liquor to one intoxicated, or in the habit of becoming intoxicated, is an illegal and unlawful act, and for which not only actual but punitive damages may be recovered in proper cases under our statute.

It is also objected that the court erred in giving the 5th, 6th and other instructions on behalf of the plaintiff, because the instructions assume that beer is an intoxicating liquor. We do not find the instructions open to that criticism. The instructions refused by the court, asked on behalf of the defendants, were properly refused. Every rule of law properly applicable to the defense was given, and we think the defendants have no just grounds of complaint. Inasmuch as the declaration charged the selling as well as giving intoxicating liquors, we think there was no error in giving the instructions to the jury relating to the giving of such liquor to plaintiff's husband, as there was evidence in the record to justify their being given. The third instruction was not erroneous in saying to the jury that they might infer injury to plaintiff's means of support upon proof of her husband's death.

Finding no error in this record, the judgment is affirmed.

*Judgment affirmed.*